[S. F. No. 4761.   Department One.—November 13, 1908.]

EMELIE MOULTRIE, Administratrix of Estate of Handley B. Doane, Deceased, Respondent, v. HARRY WRIGHT, WILLIAM C. HOFFMAN et al., Appellants.

RESULTING TRUST—PAYMENT OF HALF PRICE OF LAND.—When one who pays only one half of the price of land purchased from a third person takes the whole title in his own name, a trust results in an undivided one half of the land in favor of another who has paid the remaining half of the purchase money.

ID.—MORTGAGE TAKEN FROM TRUSTEE—KNOWLEDGE OF TRUST.—A mortgage taken from the trustee, holding the legal title, without knowledge of the trust, is not subject thereto; but if taken with knowledge of the trust is subject to the rights of the beneficiary, and its lien is subordinate to the trust.

ID.—ACTION BY ADMINISTRATRIX OF DECEASED MORTGAGEE TO QUIET TITLE—FORECLOSURE SALE—KNOWLEDGE BY MORTGAGEE—SUCCESSION TO TRUST.—In an action by the administratrix of the deceased mortgagee to quiet title obtained under foreclosure of the mortgage by her, in which the grantee of the deceased beneficiary of the trust set up a cross-complaint alleging the trust, and knowledge thereof by the mortgagee, if such trust and knowledge is shown, the title obtained by the administratrix in her representative capacity under such foreclosure, must be held by her as successor of the trustee in trust for the grantee of the beneficiary, free from the mortgage lien.

ID.—ADMINISTRATRIX PURCHASING WITHOUT NOTICE NOT PROTECTED. —If the mortgagee had notice of the trust in his lifetime, when he took the mortgage, the mere purchase by the administratrix for the benefit of the estate of the title acquired under foreclosure of the mortgage by her, without knowledge of the trust on her part, cannot make her an innocent purchaser, nor discharge the land from the trust.

ID.—BURDEN OF PROOF UPON GRANTEE OF BENEFICIARY.—The grantee had the burden in such case to prove that the beneficiary made payment toward the price of the mortgaged land, and that the mortgagee had knowledge thereof when the mortgage was taken.

ID.—CLEAR PROOF OF RESULTING TRUST—CONFLICTING EVIDENCE AS TO RELATIVE VALUE OF LAND—PRESUMPTION.—When the evidence clearly shows a resulting trust by substantial contribution by the beneficiary toward the purchase of the mortgaged land, notwithstanding conflicting evidence as to the relative value of the land contributed, and as to whether plaintiff's land equaled a full half of the purchase money, the payment of part thereof raises the presumption that a trust was intended.

ID.—ERRONEOUS EXCLUSION OF EVIDENCE OF NOTICE.—It was prejudicial error to exclude evidence offered by the grantee of the beneficiary to prove that the mortgagor prior to the mortgage notified the mortgagee that the beneficiary owned one half of the land and that he held half of the title in trust for her, and that the mortgagee was satisfied to take his half as security for the money loaned.

ID.—MORTGAGOR A COMPETENT WITNESS TO PROVE NOTICE.—The mortgagor, who was not a party to the action to quiet title, was a competent witness to prove that he gave to the mortgagee notice of the facts constituting the trust held by him, notwithstanding the apparent execution of the mortgage by him upon the whole land. Neither the beneficiary nor her grantee were estopped by the mortgage, and the grantee was entitled to the benefit of such evidence of notice to the mortgagee.

ID.—DEED TO ONE PARTY NO REBUTTAL OF RESULTING TRUST—PAROL EVIDENCE.—The deed to one of the parties does not tend to rebut the resulting trust. Such a deed always attends a resulting trust from contribution to purchase money; and parol evidence is admissible to explain the deed to this extent.

ID.—LACHES NOT APPLICABLE TO RESULTING TRUST.—The doctrine of laches applicable to a constructive trust, can have no application to a resulting trust, where the title is taken in trust by agreement in consideration of the payment of a part of the purchase money.

ID.—NON-EXISTENCE OF TRUST—FINDING AGAINST EVIDENCE.—*Held,* that the finding that no trust ever existed was contrary to the evidence, which is clear and uncontradicted that the beneficiary paid part of the price of the land.

ID.—SUBROGATION TO RIGHTS OF PRIOR MORTGAGOR BY MORTGAGEE NOT INVOLVED.—*Held,* that no claim of subrogation by the mortgagee to the rights of a prior mortgagor is involved in the case, as presented, under the pleadings, and that no such claim was asserted in the foreclosure suit, or in this suit, and it constitutes no bar to a judgment enforcing the trust, nor a defense to the cross-complaint, as the pleadings stand.

APPEAL from an order of the Superior Court of Santa Cruz County denying a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Benj. K. Knight, Chas. M. Cassin, and Cassin & Lucas, for Appellants.

Charles B. Younger, and Mullany, Grant & Cushing, for Respondent.

SHAW, J.—The defendants appeal from an order denying their motion for a new trial. The defendants interested are Wm. C. Hoffmann and Louise Wright. It is claimed that the court below erred in excluding important and material evidence for the defendants and for the cross-complainant, Hoffmann.

The complaint stated a cause of action against the defendants to quiet title to a tract of land. The defendants jointly answered, alleging that Hoffmann was the owner of an undivided one half of the land, that the defendant Louise Wright held under him as lessee thereof, and that the deceased, Handley B. Doane, and plaintiff, as his administratrix, held the title to said one-half interest in trust for said defendants. Hoffmann filed a cross-complaint setting forth the facts upon which the alleged trust arose and existed and asking that the trust be declared and enforced. The facts alleged in the cross-complaint are as follows:—

The plaintiff and Hoffmann claim under a common source of title, one Alfred H. Fitch, who was the owner in fee of the land on August 23, 1886. On that day he executed to Felipe Tarpio, whose true name is Tapia, but who is also known as Tarpio, a deed purporting to convey said land to Tarpio. The consideration for this deed consisted of six hundred dollars in money paid to Fitch by Tapia, a deed by Tapia to Fitch conveying to Fitch three lots in Santa Cruz, and a deed executed by one Carlotta Amaya, afterwards and now the wife of Tapia, conveying to Fitch a certain parcel of land near Santa Cruz, of the value of twelve hundred dollars, and equal in value to the lots conveyed and the money paid to Fitch by Tapia. It was, at the time, agreed between Tapia and Carlotta Amaya that they were each to own an undivided one half of the land conveyed by Fitch to Tapia, and that Tapia should hold title to the one half thereof in trust for Amaya. On September 7, 1887, Handley B. Doane loaned to Tapia one thousand dollars, taking as security a mortgage on the land from Tapia alone. Tapia, at the time, informed Doane that he owned but an undivided one half thereof, that Carlotta Amaya, who was then his wife, owned the other undivided one half and that he held title to her half in trust for her. Afterwards said mortgage was foreclosed by plaintiff as administratrix of Doane's estate and a deed was executed to

plaintiff, as such administratrix, in pursuance of the sale upon said foreclosure decree. Prior to the foreclosure, Tapia and his said wife, Carlotta, mortgaged the land to Christian Hoffmann, who assigned the mortgage to the appellant and cross-complainant, William C. Hoffmann. On May 25, 1897, while said foreclosure suit was pending, Tapia and his said wife conveyed the land to appellant Hoffmann, in satisfaction of the Hoffmann mortgage. Hoffmann, as successor of Carlotta, claims an equitable title to an undivided one half thereof and that his said title is superior and paramount to the Doane mortgage and to the plaintiff's title thereunder.

The claim of Hoffmann depends upon the existence of the alleged trust in favor of Carlotta Amaya, and upon the knowledge of said trust by Doane at the time Tapia executed to him the mortgage under which plaintiff claims. The payment by Carlotta Amaya of one half of the price of the land conveyed by Fitch to Tapia, at once created a resulting trust in favor of Carlotta in an undivided one half of the land and the title thereto was thereafter held by Tapia, the grantee, in trust for her. (Civ. Code, sec. 853; *Thomas* v. *Jameson,* 77 Cal. 93, [19 Pac. 177]; *Hidden* v. *Jordan,* 21 Cal. 99; *Case* v. *Codding,* 38 Cal. 193; *Somers* v. *Overhulser,* 67 Cal. 237, [7 Pac. 645]; *Fulton* v. *Jansen,* 99 Cal. 591, [34 Pac. 331]; *Murphy* v. *Clayton,* 113 Cal. 157, [45 Pac. 267]; *Polk* v. *Boggs,* 122 Cal. 114, [54 Pac. 536]; *Faylor* v. *Faylor,* 136 Cal. 92, [68 Pac. 482].) And if Doane took his mortgage from Tapia with knowledge of the trust, his mortgage lien was subject thereto, and any title to such one-half interest that might be obtained by him, or by his estate, or by his administratrix in her representative capacity, under a foreclosure of such mortgage, would be held as successor of Tapia in trust for Carlotta Tapia or Hoffmann, her grantee, free from the mortgage lien. (*Prince* v. *Reeves,* 38 Cal. 457; *Riley* v. *Martinelli,* 97 Cal. 580, [33 Am. St. Rep. 209, 32 Pac. 579]; *Murphy* v. *Clayton,* 113 Cal. 157, [45 Pac. 267].) If Doane had no notice when he took the mortgage, nor prior to his death, and the administratrix bought for the benefit of the estate, without notice, she would hold as an innocent purchaser free from the trust. (*Riley* v. *Martinelli,* 97 Cal. 580, [33 Am. St. Rep. 209, 32 Pac. 579]; *De Lany* v. *Knapp,* 111 Cal. 169, [52 Am. St. Rep. 160, 43 Pac. 598].) But if Doane had notice, the mere purchase for the estate by

the administratrix at the foreclosure sale, without knowledge on her part, would not make her an innocent purchaser, nor discharge the land of the trust.

It was, therefore, absolutely necessary for Hoffmann to prove, not only that Carlotta Amaya paid a part of the price of the land conveyed by Fitch to Tapia in 1886, but also that Doane had knowledge thereof when he took his mortgage in 1887. He introduced in evidence the deed from Fitch to Tapia and the deeds from Tapia to Fitch and from Carlotta Amaya to Fitch, and proved that all of them were recorded on the same day, August 31, 1886. Fitch then testified that these conveyances to him were made in consideration of the land he deeded to Tapia, that the land he got from Carlotta Amaya was then worth twelve hundred dollars, that the land obtained from Tapia was then worth nine hundred dollars and that Tapia paid some money in addition, the amount of which he could not remember. Tapia then testified that he paid Fitch six hundred dollars in money as part of the price of the land and that the lots he deeded to Fitch were then worth six hundred and fifty dollars. He was then asked if, at the time of making the Doane mortgage, he told Doane the facts as to the interest he owned. Objection was made and sustained to the question. Hoffmann thereupon offered to prove by the witness that, at the time witness made that mortgage, he told Doane that Carlotta Amaya had paid one half of the price of the land to Fitch, that she was the real owner of one half of the land and he of the other half, and that he held the title, as to one half, in trust for her, and that Doane said he was satisfied with one half of the land as security for the money loaned. This was objected to on the ground that it was irrelevant, immaterial, and incompetent, that Tapia's mortgage purported to cover the entire estate in the land and that he could not be a competent witness to explain, or vary, the terms of his mortgage. The court sustained the objection and excluded the evidence.

That this was error there can be no doubt. We have already seen that proof that Doane had notice of the trust was material and essential to the case of Hoffmann. Tapia was a competent witness to prove that he informed Doane of the trust, or of the facts upon which the trust arose. If he himself had been claiming one half of the land in question free

of the mortgage lien, there would be force in the objection that, in the absence of mistake or fraud, he would be estopped to do so. But the person in whose favor the trust was created was not Tapia, but Carlotta Amaya, and Hoffmann was claiming as her successor and not as the successor of Tapia. Carlotta Amaya was not estopped by Tapia's mortgage, and neither was her successor in interest estopped. Tapia was not a party to this action.

Respondent asserts that the evidence of the trust was not clear or convincing, that the right to enforce the same was lost by laches, that it was a stale claim, and that the creation of such trust was rebutted by the taking of the deed in Tapia's name, and the other circumstances shown, and that it was not proven that a trust in her favor was intended or contemplated, and from these circumstances he argues that the defendants' case was without merit and that the erroneous ruling was not prejudicial.

The payment of a part of the consideration by a third person raises a presumption that a trust in favor of such third person was intended (Civ. Code, sec. 853). Respondent is not in a position to claim that the circumstances rebutted such presumption of intention, for Tapia was asked to testify as to the agreement between himself and Carlotta Amaya that he should hold in trust for her, and upon respondent's objection the evidence was excluded. If any direct proof of intention was required, defendants were entitled to this evidence and its exclusion would be prejudicial error. The insufficiency of the admitted evidence to prove the trust alleged, would be no ground for the exclusion of evidence of notice thereof to a third party dealing with the land. It might support the proposition that the rejection of evidence of notice caused no substantial injury and would not justify a reversal of the judgment. But there is no basis for the claim that the evidence of the trust was not clear or convincing. The evidence as to the exact values of the respective tracts of land conveyed to Fitch was conflicting, and this perhaps made the exact proportion or interest covered by the trust uncertain until the court should weigh the evidence and determine the values, but it was perfectly clear that Carlotta Amaya contributed substantially to the consideration paid and held a beneficial interest in a substantial proportion of the land bought of Fitch.

We see nothing in rebuttal of the trust in the circumstance that the deed was made to Tapia. It was this conveyance which made the trust relation necessary. Such conveyance always attends a resulting trust of this character, and parol evidence is admissible to explain the deed to this extent.

The defense of laches was presented by the answer to the cross-complaint. The court made no finding as to laches, but did find that Tapia and Amaya did not agree that Tapia was to hold title to her interest in trust, that there was no trust in fact, that Tapia did not inform Doane of the trust and that Doane never had knowledge thereof. As the court had excluded the evidence to prove the agreement of Tapia and Amaya and Doane's knowledge of the trust, the findings as to these particulars were in accordance with the evidence admitted, but not with that which should have been admitted. The finding that no trust ever existed was contrary to the evidence. The evidence that Carlotta paid part of the price was clear and uncontradicted. Furthermore, the evidence of the agreement of Tapia, that he would hold title to one half the land in trust for Amaya, was important and material on the question of laches. If he took the title in his own name without her knowledge or consent, the law would raise a constructive trust; if by agreement with her, then only a resulting trust would be created. (*Fulton* v. *Jansen,* 99 Cal. 591, [34 Pac. 331].) What might be deemed laches in case of a constructive trust, might be of no significance if it were a resulting trust. Under these circumstances, the exclusion of the evidence to prove the facts alleged and found to be untrue as aforesaid, was plainly prejudicial.

There was evidence that at the time Tapia bought the land it was encumbered by a mortgage to Elmer Dakan for one thousand dollars, that Tapia and Amaya agreed to pay this mortgage, as part of the price of the land, and that the money borrowed on the Doane mortgage was used to pay the prior mortgage to Dakan. The respondent claims that, in equity, this prior mortgage would be kept alive for her benefit, as administratrix, and that the estate of Doane would be subrogated to the rights of Dakan. Whether this is so or not, the claim under the Dakan mortgage would be only a lien until it was foreclosed, and as no claim to such lien was alleged or asserted in the Doane foreclosure suit, as the rights of Hoff-

mann, in virtue of the trust, were expressly excepted and reserved by the decree in that suit, and as no lien was set up to be foreclosed in this action, it follows that the claim under the Dakan mortgage does not, in its present condition, constitute a bar to a judgment herein, declaring the alleged trust, nor a defense to the cross-complaint under the pleadings as they stand.

The order denying a new trial is reversed and the judgment is vacated.

Sloss, J., and Angellotti, J., concurred.

Hearing in Bank denied.