[Civ. No. 3451.   Third Appellate District.—April 17, 1928.]

BANK OF COTTONWOOD (a Corporation), Appellant, v. WILLIAM R. HENRIQUES et al., Respondents.

Carter & Smith for Appellant.

Chenoweth & Leininger for Respondents.

PRESTON (H. L.), J., *pro tem.*—Plaintiff, Bank of Cottonwood, a banking corporation, brought this action to set aside a deed made by defendant William R. Henriques to his sister, Marie E. Henriques, on December 28, 1921, on the ground that said deed was made and executed for the purpose of hindering, delaying, and defrauding the creditors of the said defendant William R. Henriques.

Frank R. Henriques, the father of defendants William R. Henriques, and Marie E. Henriques, intervened in this action and claimed that he was the owner of the 600 acres of land in Tehama County described in said deed from William R. Henriques to Marie E. Henriques, and that said property was held in trust for him by Marie E. Henriques.

The case, being one in equity, was tried by the court sitting without a jury, and judgment was rendered in favor of the intervener Frank R. Henriques, from which judgment the plaintiff Bank of Cottonwood prosecutes this appeal.

Most of the material facts are without substantial conflict and can be thus briefly stated: The plaintiff is a banking corporation organized under and by virtue of the laws of the state of California and having its principal place of business in the town of Cottonwood, Shasta County, California. Defendant William R. Henriques was engaged in the stock business and had from time to time borrowed small sums of money from the appellant on his unsecured note. On December 15, 1919, William R. Henriques owed the appellant for money theretofore borrowed on two unsecured notes $660. He had never given appellant any statement of his financial condition. On December 15, 1919, he visited the bank and the cashier explained to him that the state banking department required from all debtors, when the loan reached the sum of $500 or more, a statement of the debtor's financial condition, and requested him to furnish such a statement to the bank. Thereupon the cashier produced a blank form of financial statement and assisted Mr. Henriques in filling it out, the cashier asking the questions and inserting Mr. Henriques' answers thereto, and when this statement was completed it was signed by William R. Henriques and filed with the bank. This statement, as far as the land in question is concerned, is as follows:

"Description of Real Estate

| Location Tehama Co. | Improve- ments Fenced | In whose name is ti- tle held Self | Value of land and improve- ments $4200.00 | Amount of mortgages or liens No." |
|---|---|---|---|---|

It must be remembered that at the time this statement was signed on December 15, 1919, William R. Henriques was not borrowing or attempting to borrow any further moneys from appellant. Thereafter and on the 23d of July, 1920, William R. Henriques applied to appellant for a further loan of $3,500 on 110 head of cattle. These cattle were appraised by appellant at $55 per head and the loan was made and a chattel mortgage on the cattle was taken to secure the same. At the time this $3,500 loan was made no further financial statement was made or requested of William R. Henriques. The evidence is conflicting as to whether or not the old financial statement was considered; the cashier claimed that it was referred to and discussed, and it was because of such statement as to ownership of the land, made by William R. Henriques, that the loan of $3,500 was made. William R. Henriques, on the other hand, claims that the statement was not mentioned or re- ferred to in any way in connection with the $3,500 loan and that this loan was made solely upon the chattel mort- gage on the cattle. However, the court found upon this conflicting testimony "that said loan of $3500 was made to the defendant, William R. Henriques, solely upon and by reason of the security of the cattle. . . . It is not true that on or about the 23d day of July, 1920, said defendant, William R. Henriques, represented to plaintiff that he was the owner in fee of the land described in the deed." (The land in dispute.)

Out of the $3,500 loan the bank deducted the two unse- cured notes and paid William R. Henriques the balance, so at that time the entire indebtedness to the bank was $3,500.

William R. Henriques did not pay said note of $3,500 and some of the cattle covered by the chattel mortgage died and others were lost, and on the 8th of September, 1924, the bank brought an action to foreclose said mortgage and

judgment was obtained and all of the cattle that could be found were sold, and a deficiency judgment was docketed against William R. Henriques for $4,275.65, which remains unsatisfied.

The appellant never had any description of the land other than that stated in the financial statement and never examined the records until some time in July, 1924, at which time it discovered that William R. Henriques had executed a deed on December 28, 1921, to Marie E. Henriques for 600 acres of land, which appellant claims was the land listed in the financial statement given by William R. Henriques to it on December 15, 1919. After discovering this deed of record the appellant bank commenced this present action on March 31, 1925, to have it set aside on the ground that the same was made to defraud the creditors of William R. Henriques.

On November 16, 1925, the day set for the trial of this action, Frank R. Henriques was permitted by the court to intervene and filed what is termed an "Answer of Intervener," in which he alleges, among other things, "that he now is, and ever since the 17th day of November, 1917, has been, the owner of said lands and premises described in the said deed from William R. Henriques to Marie E. Henriques, and between the 17th day of November, 1917, and the 28th day of December, 1921, said property stood in the name of said defendant William R. Henriques, but said William R. Henriques had no right, title or interest in or to said premises other than as trustee for intervener, and he never at any time authorized or empowered said William R. Henriques to represent in any manner whatsoever that said William R. Henriques was the owner or the owner in fee of said premises."

The evidence introduced on behalf of the intervener Frank R. Henriques shows without conflict that on November 17, 1917, Frank R. Henriques purchased from one M. B. Connell the 600 acres of land involved in this action for the sum of $2,700. The entire purchase price was paid by Frank R. Henriques and nothing was paid, or agreed to be paid, by William R. Henriques. The deed was made by Mr. Connell to William R. Henriques at the request of Frank R. Henriques upon the oral understanding and agreement that William R. Henriques would take and hold the

title to the property as trustee for Frank R. Henriques, and that William R. Henriques would have no title in or to said property other than as trustee for the said Frank R. Henriques. The deed was, immediately upon its execution, recorded in the office of the county recorder of Tehama County, and immediately after the transaction was completed the intervener Frank R. Henriques entered into possession of said lands and he has ever since November 17, 1917, had the exclusive possession and control of said lands and has paid all taxes levied or assessed against the same, received for his own use and benefit all rents and profits derived from the property, and at no time since November 17, 1917, has William R. Henriques or Marie E. Henriques had any possession or control over the property, and neither of them has received any rent or income from said property.

There is nothing in the evidence to show that Frank R. Henriques did anything to show or indicate that William R. Henriques had anything to do with the lands or had any ownership therein, except what might be shown by the deed itself, which was a simple bargain and sale deed, and did not on its face disclose any trusteeship in relation to the said lands.

At the time this deed was made Frank R. Henriques owned and was in possession of a considerable tract of land adjoining the land in question, and William R. Henriques was in nowise connected in business with his father and not on the property, but was at the time engaged in the stock business in another part of the country, at a place known as "Gas Point" in Shasta County. The land in question is situated about fourteen miles from the town of Cottonwood, but none of the officials of the bank ascertained the description or exact location of said lands, or visited the lands, or made any inquiry as to the character or condition or use of the lands, or who was in possession of the same, or who was receiving the rents, issues, and profits therefrom. Any inspection of the land, or any inquiry concerning the same, would no doubt have shown that the lands were under the exclusive possession and control of the intervener Frank R. Henriques. The lands had been leased by Henriques several times to persons who did business in and were known in Cottonwood.

William R. Henriques conveyed the land on December 28, 1921, to Marie E. Henriques at the request of the intervener Frank R. Henriques, because of the illness of William R. Henriques. There was no consideration for the conveyance.

Frank R. Henriques did not know that William R. Henriques had listed the lands with the bank, or had attempted to secure any credit on account of the property standing in his name.

From all these facts the court, as above stated, found in favor of the intervener Frank R. Henriques and made very full and complete findings upon all the issues in the case.

Appellant first contends that the deed from William R. Henriques to Marie E. Henriques was void as against the creditors of William R. Henriques, because of the insolvency of William R. Henriques. We are unable to agree with this contention for two reasons: First, the court found upon substantial evidence that William R. Henriques *was not insolvent on December 28, 1921, when he made the deed to his sister Marie E. Henriques, and that said deed was not executed for the purpose of hindering, delaying or defrauding the creditors of William R. Henriques.* It is true, as contended by appellant, that the court found that William R. Henriques was, at the time of the commencement of this action, insolvent, and that appellant was unable to satisfy its deficiency judgment against him. This deficiency judgment, however, was not entered until March, 1925, over three years after he made the deed to his sister. A person's financial condition could, and often does, materially change in three years. If a man is insolvent in March, 1925, that is no proof that he was also insolvent in December, 1921, three years before. Second, the facts are undisputed, and the court found, that when the property was purchased on November 17, 1917, the intervener Frank R. Henriques paid the whole purchase price, and that the conveyance by the seller, M. B. Connell, to William R. Henriques, was made at the request of Frank R. Henriques upon the understanding and agreement that William R. Henriques would take title to the property as trustee, for the use and benefit of

Frank R. Henriques and William R. Henriques would have no title or interest in said property other than as trustee.

The rule is well settled that when land is purchased, for which one party pays the consideration and another party takes the title, a resulting trust immediately arises in favor of the party paying the consideration, and the other party becomes the trustee. It is equally well settled that the party setting up the trust must show the money was paid by him at or before the execution of the conveyance. (Sec. 853, Civ. Code; *Murphy* v. *Clayton*, 113 Cal. 153 [45 Pac. 267]; *Case* v. *Codding*, 38 Cal. 193; *Breeze* v. *Brooks*, 71 Cal. 169 [9 Pac. 670, 11 Pac. 885]; *South San Bernardino Land & Investment Co.* v. *San Bernardino National Bank*, 127 Cal. 245 [59 Pac. 699]; *Polk* v. *Boggs*, 122 Cal. 114 [54 Pac. 536]; *Moultrie* v. *Wright*, 154 Cal. 520 [98 Pac. 257]; *Lincoln* v. *Chamberlain*, 61 Cal. App. 399 [214 Pac. 1013]; Pomeroy's Equity Jurisprudence, sec. 1033; *Brown* v. *Spencer*, 163 Cal. 589 [126 Pac. 493]; *Webb* v. *Vercoe*, 201 Cal. 754 [54 A. L. R. 1200, 258 Pac. 1099].)

It follows, therefore, that William R. Henriques *was not the owner* of the property in question, but was only the trustee for Frank R. Henriques, the real owner, and that William R. Henriques had no interest in the lands in question, to which the lien of appellant's judgment could attach.

The law is also well settled that a bankrupt may continue to discharge his duties as a trustee, and trust property in his possession does not go to his assignee or to his creditors. (*Hayford* v. *Wallace*, 5 Cal. Unrep. 476 [46 Pac. 293]; Perry on Trusts, sec. 346.)

Therefore, William R. Henriques, having no interest in the lands to which appellant's judgment could attach, it is wholly immaterial whether he was solvent or insolvent, or contemplated insolvency when he made the deed of the trust property to his sister, Marie E. Henriques.

It is next contended by appellant that the intervener Frank R. Henriques is estopped from asserting title to the property in question for the reason that he voluntarily placed the title of record in the name of William R. Henriques. There is no merit in this contention. The inter-

vener did absolutely nothing other than to permit his property to stand of record in the name of William R. Henriques. There is nothing in the record to show that the intervener knew anything about any representations made by William R. Henriques to appellant regarding the ownership of the land. From the time the land was purchased, intervener was in possession thereof, receiving all rents and profits, and paying all taxes assessed thereon. Appellant made no examination of the record or the land to ascertain who was in possession of the same. Furthermore, the findings negative the idea that the bank, in making the loan of $3,500 to William R. Henriques, relied on the financial statement of William R. Henriques that he owned the land. Indeed, the court found upon sufficient evidence that the bank loaned the $3,500 *solely and alone upon the security of the chattel mortgage upon the cattle.*

It was necessary for the appellant, in order for it to prevail in this action, to show that Frank R. Henriques was in some way privy to William R. Henriques' obtaining credit from the bank, or that in gaining such credit, the bank relied upon some affirmative statement or act of Frank R. Henriques, other than his permitting the title to stand of record in the name of William R. Henriques, and the mere fact that Frank R. Henriques allowed the title to the land to stand of record in the name of William R. Henriques is unavailing to appellant, unless it established to the satisfaction of the court that they relied thereon as an inducement to give credit to William R. Henriques (*Breeze* v. *Brooks,* 97 Cal. 75 [22 L. R. A. 257, 31 Pac. 742] ; *Murphy* v. *Clayton, supra*), but, as we have seen, the findings of the trial court negative any such contention.

It does not appear that the deed from William R. Henriques to Marie E. Henriques was made to hinder, delay or defraud the bank; on the contrary, it was made simply to *transfer the bare legal title* to the land from William R. Henriques to Marie E. Henriques.

Appellant further contends that the facts of the case at bar bring it within the provisions of section 1214 of the Civil Code. We find no merit in this contention. Section 1214 deals exclusively with *bona fide purchasers and mortgagees, and appellant is neither a purchaser nor a*

*mortgagee of the land in question.* Approximately three years before the action to foreclose the chattel mortgage was commenced and the property attached, it had been conveyed to Marie E. Henriques.

If the property had stood of record in the name of William R. Henriques at the time of the commencement of the foreclosure suit and sold under execution and purchased by appellant, then, and in that case, section 1214 of the Civil Code would apply and the intervener would have been foreclosed of all interest in the property, provided, of course, appellant had no notice of the claim of the intervener. The appellant, being neither a *bona fide* purchaser nor a mortgagee, *must have obtained a judgment affecting the title to property in question* in order to claim any benefit under section 1214 of the Civil Code. (See *Riley* v. *Martinelli*, 97 Cal. 575 [33 Am. St. Rep. 209, 21 L. R. A. 33, 32 Pac. 579] ; *Murphy* v. *Clayton, supra.*)

It seems too clear to admit of argument that the filing of the suit to foreclose the chattel mortgage on September 8, 1924, and the attempted attachment of the land, then standing of record in the name of Marie E. Henriques, and the obtaining of a money judgment against William R. Henriques, *is not the obtaining of a judgment affecting the title to the property· in question within the meaning of section 1214 of the Civil Code.*

While the facts in the case of *Moore* v. *Schneider,* 196 Cal. 393 [238 Pac. 85], relied upon by appellant, are entirely different from those in the case at bar, still the court in that case, speaking of the purpose of section 1214 of the Civil Code, used the following language, which is particularly appropriate here: "Its purpose is to prevent fraud through the withholding of notice of transactions affecting titles, to the detriment of subsequent purchasers in good faith, and for a valuable consideration, and those who may seek to confirm their claims to real property by judgments affecting the title."

Lastly, appellant contends that it should be protected by applying the provisions of section 3543 of the Civil Code, "that where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened, must be the sufferer." Under the facts of this case this

section has no application. In the first place, this is an action to set aside a deed upon the ground that *it is made to defraud creditors;* secondly, the court found that the appellant *did not act upon the financial statement made by William R. Henriques that he was the owner of the land in making the loan.*

Appellant's whole contention, in its last analysis, is that intervener Frank R. Henriques is estopped from claiming the land in question by reason of the fact that he permitted the title to stand of record in the name of his son William R. Henriques. A complete answer to this contention is the finding of the trial court that appellant *never acted upon the representations made to it by William R. Henriques that he was the owner of the property, but on the contrary, the loan was made to William R. Henriques solely on the security of the cattle.*

After a careful review of the entire record we are of the opinion that the trial court's conclusions were correct and that the judgment should be affirmed and it is so ordered.

Hart, Acting P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 14, 1928.

All the Justices concurred.